UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10432-RGS

LYDIA CURTIN-WILDING,
individually and on behalf of all others similarly situated

v.

TRUSTEES OF BOSTON UNIVERSITY

MEMORANDUM AND ORDER ON MOTION FOR JUDGMENT ON THE
PLEADINGS, MOTION TO AMEND THE COMPLAINT, AND MOTION TO
CERTIFY QUESTIONS OF LAW

August 27, 2025

STEARNS, D.J.

Before the court is defendant Trustees of Boston University's (BU) motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), as well as plaintiff Lydia Curtin-Wilding's motions to amend the Complaint, Fed. R. Civ. P. 15(a)(2), and to certify certain questions of law to the Massachusetts Supreme Judicial Court (SJC), Mass. S.J.C. Rule 1:03. For the following reasons, the motion for judgment on the pleadings is allowed. The motions to amend the Complaint and certify questions of law to the SJC are denied.

## BACKGROUND

The court assumes familiarity with the facts of the case. Since August of 2015, BU, a private, nonprofit research institution of higher education

with campuses in Boston, employed Curtin-Wilding as a salaried Lecturer. Compl. (Dkt. # 1) ¶ 13. BU paid Curtin-Wilding on a monthly basis on or about the last business day of each month. *Id.* ¶¶ 15, 18. She claims that BU's policy resulted in the wages that she and the putative class members earned in the first half of the month from February 18, 2022, until August 1, 2023, being paid approximately nine days late, in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Wage Act). *Id.* ¶¶ 18, 23. Curtin-Wilding filed this putative class action on February 21, 2025. *See* Dkt. # 1. On May 23, 2025, this court denied BU's motion to dismiss the Complaint. *See* Dkt. # 34. On June 6, 2025, BU filed its Answer. *See* Dkt. # 38.

On July 4, 2025, Massachusetts Governor Maura Healey signed a budget bill into law, which included Section 113 of Chapter 9 of the Acts and Resolves of 2025 (Section 113). Section 113 provides immunity to nonprofit institutions of higher education and nonprofit organizations that comprise a health care delivery system from Wage Act lawsuits targeting the employers' monthly payment of wages to employees. *See* 2025 Mass. Acts. ch. 9, § 113.[1]

---

[1] On April 16, 2025, the Joint Committee on Labor and Workforce Development held a hearing on two bills, Bill S.1369 and Bill H.2164, which were the precursors of Section 113. *See Daggett v. Comm'n on Gov't Ethics & Election Pracs.*, 205 F.3d 445, 456 n.9 (1st Cir. 2000) (holding that the court may take judicial notice of legislative facts). At the hearing, Rob McCarron, the President of the Association of Independent Colleges and Universities in Massachusetts, testified that the proposed legislation would

Following the passage of Section 113, on July 25, 2025, BU filed a motion for judgment on the pleadings. *See* Dkt. # 39. Three days later, on July 28, 2025, Curtin-Wilding filed a motion to amend the Complaint. *See* Dkt. # 41. On August 1, 2025, she filed a motion to certify a question of law to the SJC. *See* Dkt. # 48. On August 19, 2025, Curtin-Wilding filed another motion to certify additional questions of law to the SJC. *See* Dkt. # 56. Before the court are the pertinent motions, which the court will discuss in turn.

## DISCUSSION

**1. Motion for Judgment on the Pleadings**

Rule 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole. "In the

---

correct "unintended consequences" of the Wage Act, manifesting in the filing of multiple class action lawsuits against universities in Massachusetts. *See* Higher Educ. Hearing (Constitutional Amendment/Higher Education: Hearing on S.1369, H.2164 Before the Joint Comm. on Lab. & Workforce Dev., 194th Gen. Ct. (Mass. 2025) (statement of Rob McCarron) (Dkt. # 50-2)) at 2:23. On May 29, 2025, the bills were also discussed at a supplemental budget hearing. The Senate proposed amendments to the legislation and appointed a joint conference committee to reconcile the differences. On June 30, 2025, the House and Senate accepted the conference committee reports and enacted the budget legislation.

archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom. . . ." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008), quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

    BU argues that judgment on the pleadings is appropriate because Section 113 provides statutory immunity to BU based on a plain reading of the legislation. *See* Dkt. # 40 at 6. Curtin-Wilding concedes that Section 113 "grants immunity only to 'nonprofit institutions,'" *see* Dkt. # 42-1 at 2, but challenges the constitutionality of Section 113, claiming that it: (a) is an unreasonable and inequitable retroactive statute under the United States and Massachusetts Constitutions, *see* Dkt. # 50 at 9; (b) is an impermissible selective exemption to standing laws in violation of Article X of the Massachusetts Declaration of Rights, *see* Dkt. # 50 at 6; and (c) violates the remedies clause of Article XI of the Massachusetts Declaration of Rights, *see* Dkt. # 50 at 20.

4

> The Wage Act requires that:
>
> Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week.

Mass. Gen. Laws ch. 149, § 148.  However, Section 113 provides that:

> Nonprofit institutions of higher education and nonprofit organizations that comprise a health care delivery system shall be immune from liability with regard to any claim or cause of action seeking a legal or equitable remedy or other relief commenced between July 1, 2024 and September 30, 2028, inclusive, that alleges that the institution's or organization's payment of wages on a monthly basis or pursuant to any written policy, schedule, or agreement presented or made available to an employee concerning payment for work performed over an academic term violated section 148 of chapter 149 of the General Laws; provided, however, that earned wages shall have been paid in full within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) pursuant to any written policy, schedule or agreement presented to an employee concerning payment for work performed over a specific period or an academic term.

2025 Mass. Acts. ch. 9, § 113.  The court agrees with the parties that the plain language of Section 113 immunizes BU from liability for Curtin-Wilding's Wage Act claim that BU paid her on a monthly basis.  *See Summit Inv. and Development Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir. 1995) (holding that words in a statute are to be given their plain meaning unless a literal interpretation leads to an absurd result).  Curtin-Wilding's claim, which was

filed on February 21, 2025, squarely falls within the applicable statutory period.[2]

## A. Retroactive Application of Law

"The legal analysis of whether retroactive statutes violate the Due Process Clause of the United States Constitution is that also followed as to the Massachusetts Constitution." *Dutra v. Trs. of Bos. Univ.*, 96 F.4th 15, 19-20 (1st Cir. 2024), citing *Nantucket Conservation Found., Inc. v. Russell Mgmt., Inc.*, 380 Mass. 212, 214 (1980); *see Am. Mfrs. Mut. Ins. Co. v. Comm'r of Ins.*, 374 Mass. 181, 194 (1978) ("[W]e perceive no need for separate analysis of [plaintiffs'] various contentions under the impairment-of-contracts clause and under the [D]ue [P]rocess [C]lause of the United States Constitution and cognate State constitutional provisions."). "Retroactive legislation must satisfy the due process test: 'a legitimate legislative purpose furthered by rational means.'" *Dutra*, 96 F.4th at 20, quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992). "A

---

[2] Curtin-Wilding argues that BU must amend its Answer to include its unpled affirmative defense of immunity under Section 113 before moving for judgment on the pleadings. *See* Dkt. # 50 at 3. BU contends that Section 113 is not an affirmative defense. *See* Dkt. # 55 at 2. "When an affirmative defense is 'definitively ascertainable from the complaint and other allowable sources' and the facts are "suffic[ient] to establish the affirmative defense with certitude,'" a court may grant a Rule 12(c) motion. *Taylor v. Milford Reg'l Med. Ctr., Inc.*, 733 F. Supp. 3d 8, 13 (D. Mass. 2024), quoting *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008).

legislative enactment carries with it a presumption of constitutionality, and the challenging party must demonstrate beyond a reasonable doubt that there are no conceivable grounds which could support its validity." *Id.* (citation and internal quotation marks omitted). "Only those statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *Id.*

In evaluating the reasonableness of a retroactive statute, the court weighs three factors:

> (1) the nature of the public interest which explicitly or may have motivated the Legislature to enact the retroactive statute; (2) the nature of the rights affected retroactively and the reasonableness of any reliance expectations on those rights; and (3) the extent or scope of the statutory effect or impact, including whether the statute is appropriate and narrowly tailored.

*Id.*

As to the first factor, the court finds Section 113 serves the public interest by addressing "the devastating financial impact" of these Wage Act claims to Massachusetts institutions of higher education. *See* Higher Educ. Hearing at 3:14-23. McCarron, President of the Association of Independent Colleges and Universities in Massachusetts, testified before the Joint Committee on Labor and Workforce about the bill, which would become Section 113. He referenced this lawsuit and others like it:

7

> [The lawsuits] place[] hundreds of millions of dollars and even billions of dollars at issue. It is very important to note that all of the employees of the institutions that have been targeted by these class action lawsuits received their full pay and on a regularly scheduled basis. There are no allegations that any employee was paid less than what they were owed, and there are no allegations that any employee was paid later than the established pay structure. Again, the intent of the Mass Wage Act is to go after those unscrupulous employers and there is no allegation of any of that in these cases. And the financial harm to the institutions is entirely disproportionate to the damages suffered by the affected employees, and the resulting harm to the institutions would dramatically affect their ability to serve students and employees.

Higher Educ. Hearing at 4:2-20. At the conclusion of McCarron's testimony, Representative McCurty stated:

> Look, we and the legislature, we try to do the best we can but we don't get it right all the time and occasionally there's an unintended consequence. One of the beauties of the work that we do is have an opportunity to go back and, you know, address these matters. So, its really important that you are here.

*Id.* at 6:12-18. The "Legislature is well aware that Massachusetts is home to a number of colleges and universities, and they are vital to the state's economy." *Dutra*, 96 F.4th at 22. Private, nonprofit colleges in the Commonwealth "educate 290,000 students and employ nearly 100,000 people . . . and represent a $71 billion impact for the state each year." *See* Higher Educ. Hearing at 2:14-17. And "[e]ven if the statute disproportionately benefits private actors, that does not mean it was enacted

8

contrary to public interest." *Rodrigues v. Coll.*, 710 F. Supp. 3d 95, 100 (D. Mass. 2024).

As to the second factor, the court finds that Section 113 is based upon "reasonable conditions and of a character appropriate to the public purpose justifying its adoption." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 22 (1977), citing *Hudson Water Co. v. McCarter*, 209 U.S. 349, 445-447 (1908). Although Curtin-Wilding alleges that had she known the Legislature was "prepared to deny her, but no other category of employee, protection under the Wage Act, she certainly would not have undertaken the time, expense, and personal and professional risk to vindicate her rights," *see* Dkt. # 50 at 17, she does not persuasively show that she would have acted differently, other than forego the filing of her lawsuit, had she known Section 113 would be enacted. *See Dupont v. Chief of Police of Pepperell*, 57 Mass. App. Ct. 690, 694 (2003) (holding that parties challenging the reasonableness of a retroactive statute "must show that they acted in reasonable reliance upon the previous state of law" and "would not have acted differently had [they] known [the statute at issue] would be enacted"). There are no allegations that Curtin-Wilding, a BU employee since 2015, otherwise contested her monthly payment of wages. Nor are there any

9

allegations that BU paid Curtin-Wilding less than what she was owed or later than the established monthly pay structure.

Lastly, under the third factor, the court determines that the "extent of the impact is not excessive." *See Dutra*, 96 F.4th at 25 (courts "weigh the 'duration of the burden imposed by the retroactive statute' and 'whether the scope of the statute is narrowly drawn to treat the problem perceived by the legislature'"), quoting *Sliney v. Previte*, 473 Mass. 283, 294 (2015). The statute will affect a relatively small number of cases and is narrowly drawn to address a public policy concern determined by the Legislature to be detrimental to the welfare of the Commonwealth. *See Parello v. McKinney*, 46 Mass. App. Ct. 785, 792 (1999) (holding that the scope of a statute was not excessive because the statute affected a relatively small number of pending cases), citing *Leibovich v. Antonellis*, 410 Mass. 568, 579 (1991). In this claim, immunity is "confined to suits that commenced within the specified time frame" between July 1, 2024 and September 30, 2028. *See* 2025 Mass. Acts. ch. 9, § 113; *Dutra*, 96 F.4th at 24. The legislation only affects those suits in which a technical violation of the Wage Act occurred – Section 113 does not provide immunity to higher education institutions that have not paid in full employees' wages "within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) or pursuant to any written

10

policy, schedule or agreement presented to an employee." *See* 2025 Mass. Acts. ch. 9, § 113. Accordingly, the court finds that a balancing of all three factors weighs in favor of retroactive application of Section 113 to this case.

### B. Article X of the Massachusetts Declaration of Rights

Curtin-Wilding contends that Section 113 violates Article X of the Massachusetts Declaration of Rights because it is a "special legislation" that is designed to insulate a handful of employers, including Harvard University, Amherst College, Worcester Polytechnic Institute, Curry College, and Mass General Brigham (all of whom face pending Wage Act lawsuits). *See* Dkt. # 50 at 6.

Article X of the Massachusetts Constitution provides that "[e]ach individual of the society has a right to be protected by it in the enjoyment of h[er]s life, liberty and property, according to standing laws." Mass. Const. pt. 1., art. X. It thereby "prohibits the enactment of special legislation that singles out any person for special privileges or advantages at the expense of the rights of another." *Kienzler v. Dalkin Shield Claimants Tr.*, 426 Mass. 87, 89 (1997) (internal citations and quotations omitted). Courts have defined "special legislation" as "legislation addressed to a particular situation, that does not establish a rule of future conduct with any substantial

11

degree of generality, and may provide ad hoc benefits of some kind for an individual or a number of them." *Id.* at 89 n.2.

Section 113 applies equally to all "[n]onprofit institutions of higher education" – it does not benefit an individual in the way Article X prohibited. 2025 Mass. Acts. ch. 9, § 113; *see Donahue v. City of Boston*, 264 F. Supp. 2d 74, 83 (D. Mass. 2003) (holding that a statute at issue was not a "special legislation" that violated the Constitution of the Commonwealth of Massachusetts because it applied equally to all applicants to the Boston Police and Fire Departments who took the civil service exam after the statute's enactment). And as Curtin-Wilding concedes, Section 113 does not mention by name the six university employers facing Wage Act violation claims. *See* Dkt. # 50 at 7.

### C. Article XI of the Declaration of Rights

Lastly, Curtin-Wilding contends that Section 113 violates the remedies clause of Article XI of the Massachusetts Declaration of Rights because it strips her of all remedies for her untimely pay. *See* Dkt. # 50 at 20.

Article XI of the Massachusetts Declaration of Rights guarantees that:

> Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which [s]he may receive in h[er] person, property, or character. [S]he ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

*Graizzaro v. Graizzaro*, 36 Mass. App. Ct. 911, 912 (1994), citing Mass. Const. pt. 1., art. XI. However, the retroactive application of Section 113 to Curtin-Wilding's claim in this case is a reasonable exercise of the Legislature's authority. Moreover, Article XI's guarantee of "'a certain remedy . . . for all injuries . . . which [one] may receive' has never been construed to grant to any person 'a vested interest in any rule of law entitling [such person] to insist that it shall remain unchanged for his benefit.'" *Decker v. Black & Decker Mfg. Co.*, 389 Mass. 35, 44 (1983) (alteration in original), quoting *New York Cent. R.R. v. White*, 243 U.S. 188, 198 (1917).[3]

**2. Motion to Certify Questions of Law to the SJC**

Curtin-Wilding asks this court to certify the following questions of law to the SJC:

(1) Would the retroactive application of the immunities provided by Section 113 of Chapter 9 of the Acts of 2025 violate the due process rights under the Massachusetts Declaration of Rights of the Plaintiff and putative class members who were employees at BU paid monthly in violation of the Wage Act who have pending claims for penalty damages arising out of violations of the Wage Act occurring prior to the enactment of Section 113?

---

[3] The Massachusetts Constitution expressly permits the legislature to alter or repeal statutes. *See Pinnick v. Cleary*, 360 Mass. 1, 14 (1971) ("[C]hanges in prior law are necessary in any ordered society, and to argue that art. 11 prohibits alterations of common law rights as such, especially in the face of the specific provision to the contrary in art. 6, flies in the face of all reason and precedent.").

> (2) Does Section 113 constitute an impermissible selective exemption to Massachusetts standing laws in violation of Article X of the Massachusetts Declaration of Rights?
>
> (3) Does Section 113 violate the Article XI of the Massachusetts Declaration of Rights insofar as it extinguishes all legal and equitable remedies available to Plaintiff and the putative class under the Massachusetts Wage Act based on monthly pay violations?

Dkt. # 56 at 4-5.

The SJC permits federal courts to certify questions of Massachusetts law "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the SJC]." Mass. S.J.C. Rule 1:03; *see also Nicholls v. Veolia Water Cont. Operations USA, Inc.*, 144 F.4th 354, 358 (1st Cir. 2025). Certification is necessary only "when 'the course [the] state court[] would take is [not] reasonably clear.'" *Easthampton Sav. Bank v. City of Springfield*, 736 F.3d 46, 51 (1st Cir. 2013) (alterations in original).

Here, the SJC has "clearly articulated the method by which Massachusetts statutes are to be interpreted." *Nicholls*, 144 F.4th at 358, citing *MacLaurin v. City of Holyoke*, 475 Mass. 231 (2016). Because the state court and First Circuit have provided the framework to analyze the constitutionality of the retroactive application of a statute and alleged

violations of Article X and Article XI of the Massachusetts Declaration of Rights, certification of the questions of law are not warranted.[4]

### 3. Motion to Amend the Complaint

Curtin-Wilding seeks leave to file an Amended Complaint to: (a) add BU President Melissa L. Gilliam and BU Treasurer Nicole K. Tirella as named defendants; (b) add a cause of action for unjust enrichment under Massachusetts common law; (c) amend the late payment allegations; and (d) add 28 U.S.C. § 1332(a) as a basis for this court's jurisdiction. *See* Dkt. # 42 at 1.

A party seeking to amend a complaint more than 21 days after "service of a responsive pleading or . . . motion under Rule 12(b), (e), or (f)" must seek leave of court to do so. Fed. R. Civ. P. 15(a). When deciding a motion to amend, the court's task is to determine whether "justice . . . requires" that leave to amend be granted. *Id.* A motion to amend may be denied where the exercise is futile. *Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 19 (1st Cir. 2001). Futility means that the complaint, as amended, would

---

[4] The court additionally notes that Curtin-Wilding filed this suit, solely raising a state-law claim under the Massachusetts Wage Act, in federal court. A party "who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification . . . ." *Ken's Foods, Inc. v. Steadfast Ins. Co.*, 36 F.4th 37, 44 (1st Cir. 2022), quoting *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977).

15

fail to state a claim upon which relief could be granted. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). When leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the district court, in reviewing for futility, applies "the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.*

### A. BU's President and Treasurer

First, Curtin-Wilding seeks to add BU's President Gilliam and Treasurer Tirella as defendants to her Wage Act claim and argues that Section 113 "grants immunity only to 'nonprofit institutions' (not individuals)." *See* Dkt. # 42-1 at 2.

The court "will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable." *Att'y Gen. v. Sch. Comm. of Essex,* 387 Mass. 326, 336 (1982); *see Wild v. Constantini,* 415 Mass. 663, 668 (1993) ("Reason and common sense are not to be abandoned in the interpretive process, as it is to be supposed that the Legislature intended to act in accordance with them."). When such is the case, "[t]he legislative intention in enacting the statute must be ascertained, 'not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part . . .'" *Killam v. March,* 316 Mass. 646, 650

16

(1944).  No reasonable legislative purpose of Section 113 would be served by immunizing BU, an institution of higher education, yet holding its President and Treasurer[5] liable for purported violations of the Wage Act.  To interpret Section 113 in that way "would produce a result at odds with the intent of the statute" and defy common sense.  *Cook v. Patient Edu, LLC*, 465 Mass. 548, 554 (2013).[6]

---

[5] Gilliam and Tirella were not BU officers serving at the time of Curtin-Wilding's claim, which spans from February 18, 2022, until August 1, 2023 – Tirella was named BU's Treasurer in January of 2024, while Gilliam became BU's President on July 1, 2024.  *See* Dkts. # 51-1 at 3; 51-2 at 4; *DeMego v. Nisonson*, 2017 WL 3090212, at *2 (Mass. Super. May 25, 2017) ("Nothing in the Wage Act or in appellate decisions construing the statute indicates that someone newly hired as the president of the company becomes personally liable on their first day on the job for all wages that were allegedly earned but not paid before that time.").

[6] The Wage Act provides that:

> The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section.

Mass. Gen. Laws ch. 149, § 148.  Massachusetts courts have interpreted this provision to mean that "a president and treasurer of a corporation are 'jointly and severally liable with the corporation for the payment of unpaid wages.'" *Ellicott v. Am. Cap. Energy, Inc.*, 2017 WL 1294437, at *3 (D. Mass. Apr. 3, 2017), *aff'd*, 906 F.3d 164 (1st Cir. 2018), citing *Bisson v. Ptech, Inc.*, 2004 WL 2434638, at *1 (Mass. Super. Ct. Oct. 19, 2004); *see also Perrin v. Collaborative Eng'rs, Inc.*, 84 Mass. App. Ct. 1121, 1121 n.2 (2013) (interpreting Wage Act as "defining class of individuals subject to joint and several liability with corporation" to include "the president and treasurer of a corporation").  Where no viable claim exists against the corporate

**B. Unjust Enrichment Claim**

The court finds that adding a cause of action for unjust enrichment is futile. A fundamental prerequisite to any unjust enrichment finding is that the enrichment be "unjust." *See Bonina v. Sheppard*, 91 Mass. App. Ct. 622, 625 (2017) ("The plaintiff must establish 'not only that the defendant received a benefit, but also that such a benefit was unjust.'"), quoting *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013). There are no facts to suggest that Curtin-Wilding had a reasonable expectation that she would be paid other than on a monthly basis nor, as the court previously stated, does she allege that BU failed to pay her in accordance with that monthly schedule or for less than the amount she was owed. *See* FAC ¶ 32. Even assuming BU enjoyed some small incidental benefit in the few days of retention of Curtin-Wilding's wages, it is not what a court sitting in equity would deem an affront to "the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988).

**C. Late Payment Allegations**

In her original Complaint, Curtin-Wilding alleged that BU had a practice of paying her "wages on or about the last business day of each

---

defendant, it follows that there can be no joint and several liability chargeable to its offense.

month, even though Plaintiff and Class members did not choose or elect at their own option to be paid monthly. . ." Compl. ¶ 26. Without any additional factual allegations or explanation, Curtin-Wilding seeks to amend her Complaint to allege that she was paid at intervals "less frequently" than monthly. *See* Dkt. # 42-2 (proposed Amended Complaint) at 7. The court need not credit such a conclusory, unsubstantiated allegation. *See SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

Because it is a futile exercise, the court will deny Curtin-Wilding's motion to amend the Complaint.

## ORDER

For the foregoing reasons, BU's motion for judgment on the pleadings is <u>ALLOWED</u>. Curtin-Wilding's motion to amend the Complaint is <u>DENIED</u>. Curtin-Wilding's motion to certify the questions of law to the SJC is also <u>DENIED</u>. The Clerk will enter judgment for BU and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE